W. F. PLEW, Appellee, v. JAMES HORRABIN & COMPANY et al.,
Appellants.

**MASTER AND SERVANT:** Safety Appliance Act—Guarding Ma-
1  chinery—Concrete Mixer. A portable concrete mixer, operated by
steam power, upon a public street, is a "manufacturing or other
establishment," within the meaning of Sec. 4999-a2, Code Supp.,
1913, requiring machinery to be guarded.

**MASTER AND SERVANT:** Safety Appliance Act—Duty of Em-
2  ployee to Guard Machinery—Presumption. Duty, on the part of a
*mere employee,* to guard machinery will not be presumed from the
naked fact that such employee was in charge of the operation of
such machinery.

**APPEAL AND ERROR:** Review—Scope—Assignment of Errors—
3  **Taxation of Costs.** Taxation of costs by trial court will not be
reviewed in the absence of an assignment of error stating wherein
there was error.

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

TUESDAY, APRIL 4, 1916.

REHEARING DENIED WEDNESDAY, JUNE 28, 1916.

ACTION to recover damages for personal injury. Verdict
and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*E. J. Kelly,* for appellants.

*Stuart & Stuart* and *Miller & Wallingford,* for appellee.

WEAVER, J.—The defendants were engaged in laying a
pavement upon a street in the city of Des Moines, and plain-
tiff was one of their employees in the performance of that
work. In preparing material for the pave-
ment, defendants made use of a machine
known as a concrete mixer, operated by steam
power. The machine had an upright boiler
and a hood, or large bucket, which let down

1. MASTER AND
SERVANT: Safe-
ty Appliance
Act: guarding
machinery:
concrete mixer.

to the ground, where it was filled with sand, gravel and cement, and was then elevated to a point where the contents were emptied into a revolving drum, from which, when properly mixed, they were discharged into wheelbarrows for distribution upon the street. The operation of the machine was effected by the use of gearing and movable parts, some of which were uncovered and unguarded. It was the duty of plaintiff to attend to the work of mixing and to operate the mixer. He alleges in this case that, when it was required to move the mixer from one place to another, it was necessary to disconnect or throw the drum out of gear, and that, in order to do so, it was a part of his duty to make such disconnection. This result was accomplished by using his right hand to shift a lever, and at the same time using his left hand to set an iron pin to hold the lever in position. When the lever was thus adjusted, the machine would be propelled by its own power to the desired location. On the day in question, it being desired to move the machine, he undertook, at the order of the foreman, to adjust the lever for that purpose; and in doing so, and while using due care on his own part, the hand with which he was setting the pin was caught in the unguarded gearing, crushing his index finger in a manner to require its amputation. By reason of such injury, he alleges that he has sustained great damage in pain and suffering, loss of time, expense for treatment, and permanent impairment of his earning capacity, for all which he demands a recovery. He charges the defendants with negligence in failing to guard the gearing of the machinery, as required by law. The defendants deny the allegations of negligence on their part. There was also a plea of assumption of risk, but defendants concede in argument that, if the case is a proper one for the application of the statute requiring the guarding of machinery (and we so hold), this plea is not available to them. There is also no dispute that the gearing was unguarded and that plaintiff was injured therein, and

it is conceded that, if the statute is applicable, the failure to guard the gearing was negligence as a matter of law. The applicability of the statute is, however, vigorously denied, and it is further claimed that in any event plaintiff cannot recover because of his own alleged contributory negligence. There was a trial to a jury, which returned a verdict in plaintiff's favor for $1,000; and from the judgment rendered thereon, and from the denial of their motion for new trial, defendants have appealed. The principal points made by the appellants for a reversal of the judgment below are as follows:

I. Appellants contend that the statute making it necessary in certain cases to cover or guard or protect the gearing of machinery has no application to the mixer by which plaintiff was injured. The section of the statute the construction and application of which are here involved is found in Code Supp., 1913, and reads as follows:

"Sec. 4999-a2. It shall be the duty of the owner, agent, superintendent or other person having charge of any manufacturing or other establishment where machinery is used, to furnish and supply or cause to be furnished and supplied therein, belt shifters or other safe mechanical contrivances for the purpose of throwing belts on and off pulleys, and, wherever possible, machinery therein shall be provided with loose pulleys; all saws, planers, cogs, gearing, belting, shafting, set screws and machinery of every description therein shall be properly guarded. No person under sixteen years of age, and no female under eighteen years of age shall be permitted or directed to clean machinery while in motion. Children under sixteen years of age shall not be permitted to operate or assist in operating dangerous machinery of any kind." 29 G. A., Ch. 149, § 2.

The argument is that the provision applies by its terms to "manufacturing or other establishments" only, and the machine involved in this case is neither. The general nature and appearance of the device is indicated in the following cut:

As will be seen, it is composed of a truck and platform on which are mounted a boiler, engine and drum, together with the machinery by which the materials for concrete are handled. The drum is revolved and, when desired, the entire outfit is propelled from one location to another by the same power. When the witnesses speak of disconnecting the drum or throwing it out of gear, they evidently mean no more than the disconnection of the power, so that the drum will not revolve while the power is being applied to the movement of the truck.

The purpose of the statute above quoted, as is very apparent from a reading of its provisions, is to secure, so far as is reasonably practicable, the safety of all who may be exposed to danger from the operating of machinery in manufacturing or other establishments, and especially to promote the safety of workmen who are required in the performance of their duties to handle or work with such machinery or in close proximity thereto. The manifest danger of working with unguarded machinery and the great number of those suffering death or injury therefrom have been generally rec-

ognized, and in nearly every state laws have been enacted making it incumbent on the owner of such machinery to cover or guard its gearing and other movable parts, to prevent injurious consequences to anyone accidentally or inadvertently coming in contact therewith. As measures provided in the interest of human life, they are liberally construed by the courts to promote their humanitarian purpose. Taking, then, the language of the statute, the purpose it is intended to serve, and the character of the outfit where plaintiff was employed, may this combination of truck, boiler, engine, elevator, drum and operating machinery be fairly classed as a manufacturing or other establishment within the intent of the statute?

It is to be admitted that the language of the statute at this point is loose and indefinite in the extreme. Strictly speaking, if we look only to the accepted definitions of the single word "establishment" found in our lexicons, it is hard to find one which affords us much light or help in solving the question before us. It is perhaps not an uncommon thing for a person in a more or less jocular or slangy way to speak of his home, his shop or his place of work as his "establishment;" but, except as the use of the word is illuminated by its context or by the circumstances under which it is employed, it conveys no definite idea to the mind of the average reader. We are of the opinion, however, that, as here used, its intended scope and meaning may be ascertained with reasonable certainty when we look to the entire phrase "any manufacturing or other establishment where machinery is used." A manufacturing establishment where machinery is used can be neither more nor less than a factory, shop, mill or other place where, by the aid of machinery and applied power, raw material is converted into some new or changed form for human use or convenience, and we think it follows that "other establishments where machinery is used" is but an extension of the same thought expressed somewhat more broadly, in

order to include places perhaps not technically classifiable as factories, shops, or mills, yet still of that general nature,— places where men, by the necessities of their employment, assemble in greater or smaller numbers to work with or about machinery.

The courts of other states have had frequent occasion to consider cases not very unlike this one in principle, and the holdings are not always in harmony; but it is quite safe to say that the course of decisions marks a progressive tendency to avoid neutralizing the legislative intent by over-strict construction.

For appellants, it is argued that the term "manufacturing or other establishments where machinery is used" necessarily means or implies a building in which machinery is installed and used; but this, we think, too narrowly restricts the intended scope of the statute. The danger to be guarded against is the exposed and unguarded machinery about which men are required to work, and whether it is or is not housed under the roof of a building is a negligible incident. If machinery is used for the manufacture or preparation of a product to supply human demand therefor, and that machinery is set up and operated at some spot or place where men are employed to come and labor in and about its use and operation, we can conceive of no reason why it should not be regarded as a "manufacturing establishment where machinery is used," within the letter and spirit of the statute. A case cited by appellants as a precedent for their contention is *Ward v. City*, 86 Kans. 906, where the court by a bare majority held that failure to guard the gearing on a gasoline pump used in providing a public water supply did not come within the statute of that state. The decision is hardly in point, for the reason that the statute of that state refers to manufacturing establishments alone, and then proceeds to state in detail what shall be included under that name, thereby excluding the pumping engine from its operation. In the

only other case cited, *Chapman v. Piechowski,* 153 Wis. 356, it was held that a steam threshing machine was not within the statute. This decision was also by a divided court, two of its members dissenting. Other courts have held that a pumping outfit or station comes within the same class as a factory, mill or workshop, for the purposes of the statute. *Rase v. Minneapolis, St. P. & S. S. M. R. Co.,* 107 Minn. 260 (120 N. W. 360); *Snyder v. Box Co.,* 110 Minn. 40; *McNabb v. Clear Springs Water Co.* (Pa.), 87 Atl. 55. Quite in point is the further decision of the Pennsylvania court in *Commonwealth v. Filbert Paving Co.,* 78 Atl. 104, where it is held that a corporation engaged in laying cement and asphalt floors, pavements and structural concrete is engaged in "manufacturing," within the meaning of the tax statute. Very like the case at bar is *Casey v. Barber Asphalt Co.,* 202 Fed. 1. There the defendant was engaged in the work of street paving, and made use of an engine, mixer, grinder, elevators and other devices, all mounted on a flat car and moved from place to place on iron rails laid like a railroad track. Plaintiff was injured in an unguarded gearing and brought suit for damages. The statute there was substantially like our own, and the action was defended on the same theory, that the outfit used by defendant was not a factory, mill or workshop where machinery was used. Rejecting this theory, the court says:

"We are unable to take that view of this plant. That it was built and operated for the purpose of manufacturing out of crude material the finished product with which the defendant company paved streets and roads is not denied. It is true that it was not manufactured in any sort of a house, but we do not understand that a house is an absolutely essential element of either a factory or a mill. It is, of course, readily conceded that a factory usually and perhaps almost invariably embraces one or more buildings, and, where machinery constitutes a part of the factory, such machinery is undoubtedly

usually housed; but even at common law the factory is not limited to the building or buildings, but includes as well the premises or place where its operations are carried on. . . . It is not contended by the plaintiff in error, and it is obviously not true, that the legislature of the state of Washington by the legislation in question undertook to require the safeguarding of all machinery and like appliances. What it did declare is that every person, firm, corporation, or association operating a factory, mill, or workshop where machinery is used shall, among other things, provide and maintain in use reasonable safeguards for such machinery as that which caused the injury of the plaintiff in error; and *we are of the opinion that to say that the plant* of the defendant in error *is not embraced by the words 'factory' or 'mill,' because not permanently located in a building, is an inadmissible limitation of the scope of the terms of the statute in view of its manifest purposes.*"

If the concrete mixer with its accompanying machinery in the cited case was properly classed as a manufacturing establishment or factory or mill—and we think it was—the principle there applied requires a like conclusion in this case. It may be, as counsel suggest, that the machinery there considered was larger and more ponderous than that with which we here have to deal, but so long as it was subjected to the same kind of use for the same purpose and produced the same results, though in lesser magnitude, it must be subject to the same rule of law. If a builder should construct a light shop fitted with saws and other convenient machinery, and supply it with trucks upon which it is moved from place to place where he is employed, and makes use of such convenience for the purpose of preparing materials to be used on the job on which he is engaged, no one would question the application thereto of the statute. For equally good reasons, we hold that the defendants' mixing outfit, as described in this case, comes within the same class.

II.   Appellants make the further point that plaintiff was chargeable with contributory negligence as a matter of law. This proposition is urged upon the theory that, plaintiff being the engineer or operator of the mixer, it was his duty to install the necessary guard over the gearing in which he was injured, and, failing so to do, he must be held to have been negligent.   There is no evidence that it was any part of plaintiff's duty to construct or place guards over the gearing.   It is true that the statute charges such duty upon the "owner, agent, superintendent or other person having charge of the establishment," and it .is also true that plaintiff was the engineer engaged in operating the machine, but neither the language of the statute nor the reason which underlies its enactment indicates any legislative intent to cast upon the mere employee operating a machine the magisterial duty to provide the guards which his employers are bound to furnish.   The agent, superintendent or other person charged with this duty are only such as have "charge of any manufacturing or other establishment where machinery is used."   The objection is without merit, and there was no error in submitting to the jury the question of contributory negligence.

2. MASTER AND SERVANT: Safety Appliance Act: duty of employee to guard machinery: presumption.

III.   The court taxed the fees of three witnesses at the rate of $4 per day on the theory that they were called and testified as experts.   In support of objection thereto, we are asked to examine the testimony of the witnesses and see for ourselves that the evidence so adduced was not of expert character.   We think this is a draft upon our time which we must let go to protest.   Neither in the assignment of error nor in argument is there any suggestion as to what these witnesses did testify to, or in what respect it partook of a nonexpert character.   In the absence of something in the assignment of error and argument indicating a

3. APPEAL AND ERROR: review: scope: assignment of errors: taxation of costs,

possible mistake on part of the court in taxing the costs, its ruling thereon is conclusive upon us.

We find no substantial error in the record, and the judgment below is—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.