The UNITED STATES JAYCEES, Appellant, Cross-Appellee,

v.

Lillian RICHARDET, Lynda M. Berghe, Julie Ann Latuska, D.J. Corey and Terry Alexander, Appellees, Cross-Appellants.

Nos. 5889, 5890.

Supreme Court of Alaska.

May 27, 1983.

L.G. Berry, Robertson, Monagle, Eastaugh & Bradley, Anchorage, Carl D. Hall, Jr., Tulsa, Okl., for appellant, cross-appellee.

Danielle E. deBenedictis, Leonard M. Singer, Robert S. Brintz, Nutter, McClennen & Fish, Boston, Mass., Michael W. Flanigan, Clark, Walther & Flanigan, Judith J. Bazeley, Bazeley & Harrington, Anchorage, for appellees, cross-appellants.

Wilson L. Condon, Atty. Gen., Juneau, Carolyn E. Jones, Asst. Atty. Gen., Anchorage, for amicus curiae Alaska State Com'n for Human Rights.

Robert A. Yothers, Seattle, Wash., Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for amicus curiae Benevolent and Protective Order of Elks.

Before RABINOWITZ, CONNOR and COMPTON, JJ., and CARLSON,* Superior Court Judge.

## OPINION

RABINOWITZ, Justice.

Lillian Richardet, as representative of a female class, filed suit challenging the membership policies of the Jaycees organization. Richardet contended that the organization's by-laws excluding women from full membership violated article 1, sections 1 and 3 of the Alaska Constitution [1] and the Alaska Public Accomodations Statute, AS 18.80.230.[2] The superior court rejected Richardet's constitutional claims, but ruled

---

\* Carlson, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. Article I, § 1 of the Alaska Constitution provides:

 *Inherent Rights.* This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

 Article I, § 3 of the Alaska Constitution provides:

 *Civil Rights.* No person is to be denied the enjoyment of any civil or political right because of race, color, creed, sex, or national origin. The legislature shall implement this section.

2. AS 18.80.230 states, in full:

 *Unlawful practices in places of public accommodation.* It is unlawful for the owner, lessee, manager, agent or employee of a public accommodation

 (1) to refuse, withhold from or deny to a person any of its services, goods, facilities, advantages or privileges because of sex, mar-

ital status, changes in marital status, pregnancy, parenthood, race, religion, color or national origin;

(2) to publish, circulate, issue, display, post or mail a written or printed communication, notice or advertisement which states or implies

(A) that any of the services, goods, facilities, advantages or privileges of the public accommodation will be refused, withheld from or denied to a person of a certain race, religion, sex, marital status, color or national origin or because of pregnancy, parenthood, or a change in marital status, or

(B) that the patronage of a person belonging to a particular race, creed, sex, marital status, color or national origin or who, because of pregnancy, parenthood, or a change in marital status, is unwelcome, not desired or solicited.

AS 18.80.300(7) defines a "public accommodation" as

a place which caters or offers its services, goods or facilities to the general public and includes a public inn, restaurant, eating house, hotel, motel, soda fountain, soft drink parlor, tavern, night club, roadhouse, place where food or spiritous or malt liquors are sold for consumption, trailer park, resort, campground, barber shop, beauty parlor,

that the Jaycees' membership practices did violate the public accommodations statute and ordered the organization to admit women as full members.

On appeal, the Jaycees argue that the superior court's decision is incorrect as a matter of statutory construction and that it violates several federal and state constitutional guarantees, including due process and freedom of association. Richardet cross-appeals the superior court's rejection of her constitutional claims.

We are persuaded that AS 18.80.300(7) should not be construed to encompass a membership organization such as the Jaycees, and therefore hold that the exclusion of women from full membership in the Jaycees does not violate AS 18.80.230.[3] We find no merit in Richardet's contention that the Alaska Constitution prohibits these membership policies.

## I.

The Jaycees is a non-profit corporation organized to foster the growth of young men's civic groups in the United States. Its stated purpose is to provide members with an opportunity to develop leadership skills and to participate in community affairs.[4] The recruitment of new members is an important facet of Jaycee activity.

Various membership categories are established under the by-laws of the national organization. Individual membership status is reserved for men between the ages of eighteen and thirty-five.[5] Women may be offered only Associate Individual Memberships. Associate members are not permitted to hold office, cast votes in elections or in policy disputes, or be the recipients of any organizational achievement awards.[6] However, they are permitted to participate in most Jaycee activities, which include primarily a broad range of public service programs.

The U.S. Jaycees has debated for several years a by-law amendment that would permit women to be admitted as full members of the organization. In 1975, a "pilot membership program" was instituted that permitted local chapters in up to four states to accept women as full members. Alaska was one of the states that voted to participate. However, the experiment was terminated in June 1978 after the National Con-

bathroom, resthouse, theater, swimming pool, skating rink, golf course, cafe, ice cream parlor, transportation company and all other public amusement and business establishments, subject only to the conditions and limitations established by law and applicable alike to all persons . . . .

3. Our holding does not constitute an endorsement of the substantive wisdom of the Jaycee's policy of excluding women from full membership in the organization.

4. By-law 2–1 of the U.S. Jaycees (1978–79), which sets forth the purpose of the organization, provides in part:

This Corporation shall be a non-profit Corporation, organized for such educational and charitable purposes as will promote and foster the growth and development of young men's civic organizations in the United States, designed to inculcate in the individual membership of such organization a spirit of genuine Americanism and civic interest, and as a supplementary education institution to provide them with opportunity for personal development and achievement and an avenue for intelligent participation by young men in the affairs of their community, state and nation, and to develop true friendship and understanding among young men of all nations.

5. By-law 4–2 of the U.S. Jaycees (1978–79) provides in part:

Young men between the ages of eighteen (18) and thirty-five (35), inclusive, of Local Organization Members in good standing in this Corporation shall be considered Individual Members of this Corporation . . . .

6. U.S. Jaycees By-law 4–3 governs the rights of Associate Individual Members. It provides, in full:

An Associate Individual Member is a business concern, association, group or individual not qualified by these By-Laws and Policy to be an Individual Member of a Local Organization Member. An Associate Individual Member is not an Individual Member of The United States Jaycees and shall not have the right to vote or the right to be an officer or director in The United States Jaycees, a State Organization Member or a Local Organization Member.

vention voted against admitting women as full members. The U.S. Jaycees announced that it would revoke the charter of any state or local organization which did not come into compliance with national by-laws by December 1, 1978.

Ms. Richardet and her co-plaintiffs filed this class action to restrain the United States and Alaska Jaycees from enforcing the national by-laws. They requested that the Jaycees be required to admit women as full members. Their complaint was grounded on several common law theories as well as the Alaska public accommodations statute and the Alaska Constitution. The superior court rejected all but the statutory claim. Judge Souter held that the Alaska public accommodations statute prohibited the Jaycees from discriminating on the basis of sex in its membership policies, and ordered women admitted as full members. In addition, Ms. Richardet was awarded attorney's fees of $18,993.00. The U.S. Jaycees appealed Judge Souter's judgment, and Ms. Richardet cross-appealed the superior court's rejection of her claims arising under the Alaska Constitution.[7]

**7.** Although Ms. Richardet listed her common law claims as points on cross-appeal, these theories were not addressed in her brief. Therefore, we considered them abandoned and decline to address them here. *See Wetzler v. Wetzler,* 570 P.2d 741, 742 n. 2 (Alaska 1977); *Weaver v. O'Meara Motor Co.,* 452 P.2d 87, 93 (Alaska 1969); *Whaley v. State,* 438 P.2d 718, 723–24 (Alaska 1968).

**8.** AS 01.10.040 provides, in full:

Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage. Technical words and phrases and those which have acquired a peculiar and appropriate meaning, whether by legislative definition or otherwise, shall be construed according to the peculiar and appropriate meaning.

As we noted in *Lynch v. McCann,* 478 P.2d 835, 837 (Alaska 1970), a word may acquire a "peculiar meaning" under AS 01.10.040 through judicial construction. However, we reject appellees' claim that this is an appropriate instance for the application of this rule. An examination of cases construing the term "place" as used in state public accommodations statutes reveals a complete absence of agreement within the judiciary regarding the

## II.

■ Our holding that the Jaycees is not subject to AS 18.80.230 rests on the conclusion that it is not a "public accommodation" within the meaning of AS 18.80.300(7). This statutory provision defines a public accommodation in terms of a "place." The meaning of the term "place" as used in AS 18.80.300(7) is a question of first impression in this jurisdiction. As "place" is not specifically defined in Alaska human rights legislation, AS 18.80 et seq., and as it is not a "technical" word, it is to be construed according to its "common and approved usage." [8]

We note that the definition of the word "place" given in Webster's Dictionary refers repeatedly to spatial location as the core meaning of that term.[9] Thus, according to the "common and approved usage" of this term, it would not encompass a service organization lacking a fixed geographical situs.

Our conclusion that the legislature intended a "place of public accommodation" to be a physical location is further supported by the nature of the extensive list of examples of such "places" contained in AS

meaning of that word. *Compare United States Jaycees v. Bloomfield,* 434 A.2d 1379, 1381 (D.C.App.1981) (concluding that since Jaycees did not operate from any particular place within the District of Columbia it was beyond the reach of the District's public accommodations statute) and *Philadelphia Electric Co. v. Pennsylvania Human Relations Commission,* 5 Pa. Cmwlth 329, 290 A.2d 699, 703 (1972) (finding it "plain" that the legislature meant a place of public accommodation to be a physical location to which the general public is invited to do business) with *United States Jaycees v. McClure,* 305 N.W.2d 764, 773–74 (Minn.1981) (en banc) (holding that Jaycees organization was a "place of public accommodation" within the meaning of state anti-discrimination law) and *National Organization for Women v. Little League Baseball, Inc.,* 127 N.J.Super. 522, 318 A.2d 33, 37 (1974) (concluding that membership organizations, although not having a "specific pinpointable geographic area," are places of public accommodation if they offer advantages and facilities on the basis of a general, public invitation to join), *aff'd mem.,* 67 N.J. 320, 338 A.2d 198 (1974).

**9.** *See* Webster's New World Dictionary 1086 (2d. College Ed.1972).

**1012**

18.80.300(7).[10] Although the list of specific entities is not exhaustive, we believe that the types of establishments subject to AS 18.30.230 by virtue of the concluding phrase, "all other public amusement and business establishments," were intended by the legislature to be similar in nature to those enumerated. In reaching this conclusion, we follow the principle of *ejusdem generis,* which provides that "where particular words are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described." *Chugach Electric Association v. Calais Co.,* 410 P.2d 508, 509–10 (Alaska 1966). The list set out in AS 18.80.300(7) makes no reference to any entity resembling a membership organization. Indeed, all the establishments contained in that enumeration have a definite geographical location. In our view, the Jaycees, which does not operate from a fixed geographical situs, should not be considered a "place" for purposes of the definition of "Public Accommodation" under AS 18.80.300(7).[11] Thus, we hold that the Jaycees' organization does not fall within the prohibition of AS 18.80.230, which applies exclusively to places of public accommodation.[12]

### III.

■ Richardet cross-appeals the superior court's decision that the Jaycees' membership policies do not violate article 1, sections 1 and 3 of the Alaska Constitution.[13] The superior court rejected Richardet's claim that the Jaycees' use of public funds in conducting community service activities, and furthering organizational objectives which included expansion of its discriminatorily selected membership, constituted "state action" in violation of the Alaska Constitution. The court held that the nexus between the state and the challenged action of the private entity was insufficient to satisfy the "state action" requirement. Thus, it concluded that her constitutional claims were invalid.

Challenging this ruling, Richardet contends that "state action" is not a prerequisite to application of these constitutional provisions. In the alternative, she argues that any requisite nexus between the state and the Jaycees' conduct is satisfied. We affirm the superior court decision below.

In support of her argument that a finding of "state action" is not an essential predicate to application of article 1, sections 1 and 3 of the Alaska Constitution, Richardet relies on the fact that the equal rights provision of Alaska's Constitution, article I, section 1, declares that "all persons are equal and entitled to equal rights ... under the law," and provides that *"all persons have corresponding obligations to the people and to the State."* (Emphasis added.) She argues that the "state action" requirement has been derived from the phrase "under the law,"[14] and that the presence of

---

**10.** AS 18.80.300(7) is set out in full *supra* at note 2.

**11.** *Compare State v. First National Bank of Anchorage,* 660 P.2d 406, 412–14 (Alaska 1982), where we utilized the rule of *ejusdem generis* to determine the scope of Alaska's Unfair Trade Practices and Consumer Protection Act, AS 45.50.471—AS 45.50.561. There we addressed the question of whether the Consumer Protection Act applied to the sale of real property. In holding that it did not, it was noted that none of the twenty-five practices specifically prohibited by AS 45.50.471(b) concerned real property transactions. AS 45.50.-471(b), like AS 18.80.300(7), specifically provides that the list contained therein is not exhaustive.

**12.** Since we have resolved the statutory question on the ground that the Jaycees is not a

"place" of public accommodation, we find it unnecessary to decide whether the Jaycees should be considered a "public" organization and a "business establishment" for purposes of AS 18.80.300(7).

**13.** These provisions are set out *supra* at note 1.

**14.** Richardet distinguishes several decisions limiting the applicability of state equal rights clauses to "state action" on the ground that those constitutional provisions explicitly prohibited only discriminatory conduct "under the law." *See, e.g., Murphy v. Harleysville Mutual Insurance Co.,* 282 Pa.Super. 244, 422 A.2d 1097 (1980) ("Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Pa. Const. art. 1, § 28), *cert. denied,* 454 U.S. 896, 102 S.Ct. 395, 70 L.Ed.2d

the final phrase in article 1, section 1, broadens the scope of Alaska's equal rights provision to render it applicable to the conduct of "all persons." Similarly, she contends, article 1, section 3 affirmatively and unrestrictedly prohibits denial of civil rights because of sex, conferring upon Alaskans the right to be free from discrimination by both non-governmental and governmental entities.[15]

We reject Richardet's proposed interpretation of these constitutional provisions, and hold that the superior court was correct in ruling that "state action" is a necessary predicate to application of article 1, sections 1 and 3 of the Alaska Constitution. As we observed in *Baker v. City of Fairbanks,* 471 P.2d 386, 394 (Alaska 1970), "[t]he American constitutional theory is that constitutions are a restraining force against the abuse of *governmental* power . . . ." (Emphasis added.) Thus, we must determine whether the "state action" requirement was satisfied in this case.

In *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), the United States Supreme Court enunciated the following test for determining whether particular conduct is "private" or "state action":

> [T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.

419 U.S. at 351, 95 S.Ct. at 453, 42 L.Ed.2d at 484. Richardet argues that the requisite nexus is established by several indicia of governmental involvement with Jaycees' activities. First, many Jaycee functions take place at or utilize government facilities, such as parks, bike trails, correctional centers, armories, and aviation facilities. These facilities have been made available on a preferential basis, at reduced rates, or for free. Furthermore, several of the Jaycees' programs receive municipal, state and federal funding or contributions from these governmental units in the form of supplies, personnel, and training. Finally, Richardet observes that several Jaycee programs, such as winterization, spring clean-up and Thanksgiving fund distribution, are coordinated with government projects.

Relying upon *Jackson,* the superior court concluded that this evidence was insufficient to establish the requisite nexus between the conduct of the state and the Jaycees' membership policies, and found that the state action requirement was not satisfied. We agree. Although Richardet is correct in observing that this court has traditionally construed Alaska's constitutional provisions independently of analogous federal constitutional clauses,[16] we are

211 (1981); *Lincoln v. Mid-Cities Pee Wee Football Association,* 576 S.W.2d 922 (Tex.Civ. App.1979) ("Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin. This amendment is self-operative." Tex. Const. art. 1, § 3a).

**15.** Richardet argues that the absolute prohibition against sex discrimination in article 1, section 3 of the Alaska Constitution is, in effect, as broad as that established by article II of the Montana Constitution, which explicitly prohibits both private and governmental discrimination. The Montana Constitution provides as follows:

> The dignity of the human being is inviolable. No person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas.

Mont. Const. art. II, § 4. Richardet points out that the Alaska human rights legislation implementing article 1, section 3, AS 18.80 et seq., prohibits private as well as public discrimination. However, the legislature's construction of a constitutional provision is, of course, not binding upon this court.

**16.** *See Breese v. Smith,* 501 P.2d 159, 167 (Alaska 1972), where we stated:

> While some of the terms of article 1, section 1 parallel the language of various federal constitutional provisions, we have repeatedly held that this court is not obliged to interpret our constitution in the same manner as the Supreme Court of the United States has construed parallel provisions of the federal Constitution.

(Footnotes omitted.) *See also Williams v. Zobel,* 619 P.2d 422, 427 (Alaska 1980) (Alaska is free to adopt its own equal protection test if strict scrutiny is not required under the federal

not persuaded that it would be desirable to depart from federal standards in this case.

Several federal courts which have considered the very question at bar—whether the Jaycees' membership policies violate constitutional guarantees of equal protection—have concluded that governmental involvement with the challenged activities was insufficient to satisfy the state action requirement. Although these decisions are, of course, not controlling, we find them persuasive.[17]

 We hold that there must be a showing of a link between the organization's allegedly discriminatory conduct and the governmental involvement which is sufficiently strong to indicate that the state is,

in effect, "a joint participant in the challenged activity." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45, 52 (1961). In this case, since no showing has been made that the government is even minimally involved in determining the Jaycees' administrative and organizational structure—and, in particular, in formulating the Jaycees' membership policies—we conclude that the "state action" requirement has not been satisfied. Thus, we hold Richardet's cross-appeal should be rejected.

## IV. Conclusion

For the reasons stated, the superior court's decision granting Richardet injunc-

---

constitution), *rev'd on other grounds,* 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982); *State v. Erickson,* 574 P.2d 1, 11–12 (Alaska 1978); *State v. Browder,* 486 P.2d 925, 936 (Alaska 1971).

**17.** In one such case, the Court of Appeals for the *Second Circuit* reasoned as follows in rejecting a constitutional attack upon the Jaycees' membership policies:

The mere existence of government ties to a private organization is not sufficient to support a finding of state action. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Powe v. Miles,* 407 F.2d 73 (2d Cir.1968). As this court stated in *Powe,* "[t]he state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury." 407 F.2d at 81.... In this case the requisite connection between government and the offending activity has not been shown. Plaintiff does not charge discrimination in the operation of *federally funded Jaycee programs;* indeed such a claim could not be supported since not only do women participate both in the selection of local recipients for funding and in the implementation of programs, but also the benefits of all federally funded Jaycee programs are distributed without regard to sex or other impermissibly discriminatory criteria. Plaintiff's constitutional challenge is addressed solely to the internal membership, [sic] policies of the Jaycees; yet plaintiff has made no showing that the government is substantially, or even minimally, involved in the adoption or enforcement of these policies.

This is not a case where "[t]he State has so far insinuated itself into a position of interdependence with [the private enterprise] that it must be recognized as a joint participant in

the challenged activity ...." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961). In contrast, the government in this instance has limited itself to financial support of certain Jaycee programs, leaving the responsibility for program content, administration, management and performance in the hands of the grantees and contractors. The mere receipt of public funds does not convert the activities of a private organization into state activities.... The lack of government involvement in discriminatory internal policies is particularly clear in a case such as this where the funds provided by federal contracts and grants do not sustain the general operations of the organization but rather are funnelled directly into discrete projects from which benefits are extended to the public without discrimination of any kind.

*New York City Jaycees v. United States Jaycees, Inc.,* 512 F.2d 856, 858–59 (2d Cir.1975) (footnotes and citations omitted). The Second Circuit also rejected the claim that the Jaycees' tax exemption represented significant government involvement, and arguments that the Jaycees were subject to constitutional restrictions because they performed a "public function." 512 F.2d at 859–60. *Accord, Junior Chamber of Commerce v. Missouri State Junior Chamber of Commerce,* 508 F.2d 1031 (8th Cir.1975) (mere receipt of government funds does not render action of grantee "state action"); *Junior Chamber of Commerce v. United States Jaycees,* 495 F.2d 883 (10th Cir.1974) (grant of tax exemption and transmission of federal funds to Jaycees did not constitute state action rendering membership policies unconstitutional since alleged unconstitutional conduct did not relate specifically to governmental involvement), *cert. denied,* 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974).

tive relief and attorney's fees is RE-VERSED. The decision of the superior court in dismissing Richardet's claims under article 1, sections 1 and 3 of the Alaska Constitution is AFFIRMED.