**UNITED STATES JAYCEES, and Iowa Jaycees, Appellants,**

v.

**IOWA CIVIL RIGHTS COMMISSION, Appellee.**

No. 87–287.

Supreme Court of Iowa.

July 20, 1988.

Rehearing Denied Aug. 15, 1988.

A. Roger Witke and Kevin M. Reynolds of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, and Carl D. Hall, Jr. of Nichols, Wolfe, Stamper, Nally & Fallis, Tulsa, Okl., for appellants.

Thomas J. Miller, Atty. Gen., and Rick Autry, Asst. Atty. Gen., for appellee.

SNELL, Justice.

On August 13, 1982, respondent, Cedar Rapids Jaycees, a local organization member of the United States Jaycees, initiated this action by filing a complaint with the Iowa Civil Rights Commission. The complaint alleged that petitioners, United States Jaycees and Iowa Jaycees, (appellants herein), had violated the Iowa Civil Rights Act by refusing to admit women as regular members. A hearing officer agreed with respondent's contentions and awarded damages. This decision and damages award was adopted by the commission and affirmed in part by the district court on judicial review. Our review is limited to the correction of errors at law, Iowa R.App.P. 4, and is subject to the guidelines of our administrative procedure act, Iowa Code sections 17A.19, .20 (1981).

The United States Jaycees is a tax-exempt Missouri corporation headquartered in Tulsa, Oklahoma. There are fifty state organization members, 6300 local organization members, and approximately 263,000 individual members. Each individual member belongs to the Jaycees International, a state organization and a local Jaycees chapter. It is funded primarily through the collection of membership dues and privately-sponsored programs. It receives no federal or state funds.

The Iowa Jaycees is a tax-exempt nonprofit Iowa corporation. It holds state organization membership with the United States Jaycees. The corporation owns a building in Newton, Iowa, which serves as its headquarters and is open to anyone interested in the Jaycees. It is funded privately as is the U.S. Jaycees, and receives no federal or state funds.

The Cedar Rapids Jaycees is a nonprofit tax-exempt Iowa corporation. It holds local organization membership with the state organization, the U.S. Jaycees and the Jaycees International. It is financed as are the U.S. Jaycees and the Iowa Jaycees. It receives no federal or state funds.

The impetus for this action came from a decision in February 1981 by the Cedar Rapids Jaycees to amend their bylaws admitting to full membership "young persons" instead of "young men." Previously, membership in the local, state and U.S. Jaycees was limited to young men between the ages of eighteen and thirty-five. After this amendment was made, five women were admitted to membership. The U.S. and Iowa Jaycees advised that this action was unauthorized and violated the U.S. Jaycees' bylaws. When their discussion

came to an impasse, the U.S. Jaycees sued the Cedar Rapids Jaycees in federal court for trademark infringement. From this action an injunction was issued against the Cedar Rapids Jaycees that was in place from March 6, 1984, until October 2, 1984. During this period the Cedar Rapids Jaycees could not use the name "Jaycees" or have the benefit of other identifying insignia.

On August 16, 1984, the U.S. Jaycees amended its bylaws to admit women to full membership. This action followed the upholding by the United States Supreme Court of a Minnesota public accommodation statute as nonviolative of the United States Jaycees' right to freedom of association under the first amendment to the United States Constitution. *See Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

Thereafter, the U.S. Jaycees filed a motion to dismiss the proceeding before the Iowa Civil Rights Commission that was instituted by the Cedar Rapids Jaycees in 1982. The ground for the motion to dismiss was that further proceedings were rendered moot by the amendment to the bylaws of the U.S. Jaycees. The hearing officer refused to dismiss the action. Ultimately the civil rights commission awarded over $39,000 in damages to the Cedar Rapids Jaycees. These damages included attorney fees of $21,439.68 incurred in the defense of the federal trademark action, $4,531.80 in attorney fees incurred in the commission action, $1000 to each of the five women admitted to membership by the Cedar Rapids Jaycees, $5000 for loss of a potential donation to the Cedar Rapids Jaycees and $5000 punitive damages. On appeal, the district court reversed the punitive damages award, reversed the award for loss of a potential donation, affirmed the award to the women members, and remanded the award for attorney fees indicating that these fees should be allowed in part.

Petitioners allege a number of errors were committed in these proceedings. The first and most basic argument they advance is that the commission, and in turn the district court, erred by concluding that their organizations constituted "public accommodations" within the ambit of our civil rights act. *See* Iowa Code § 601A.2(10) (1981). Because the statutory protection upon which respondent relies specifically applies only to public accommodations, *see* Iowa Code § 601A.7 (1981), the commission's jurisdiction over this case exists only if petitioners' organizations constitute public accommodations within the statute. *See Good v. Iowa Civil Rights Comm'n*, 368 N.W.2d 151, 154 (Iowa 1985).

Our law proscribes unfair or discriminatory practices by an owner, lessee, sublessee, proprietor, manager, or superintendent of any public accommodation. Iowa Code section 601A.7 (1981). "Public accommodation" is defined by statute as follows:

"*Public accommodation*" means each and every place, establishment, or facility of whatever kind, nature, or class that caters or offers services, facilities, or goods to the general public for a fee or charge provided that any place, establishment, or facility that caters or offers services, facilities, or goods to the general public gratuitously shall be deemed a public accommodation if the accommodation receives any substantial governmental support or subsidy. Public accommodation shall not mean any bona fide private club or other place, establishment, or facility which is by its nature distinctly private, except when such distinctly private place, establishment, or facility caters or offers services, facilities, or goods to the general public for fee or charge or gratuitously, it shall be deemed a public accommodation during such period.

"*Public accommodation*" includes each state and local government unit or tax-supported district of whatever kind, nature, or class that offers services, facilities, benefits, grants or goods to the public, gratuitously or otherwise. This paragraph shall not be construed by negative implication or otherwise restrict any part or portion of the pre-existing definition of the term "public accommodation."

Iowa Code § 601A.2(10) (1981). Both the commission and the district court held that petitioners were within this definition. In doing so, they relied in part upon a federal case arising from the same facts which engendered this action. In that case, *United States Jaycees v. Cedar Rapids Jaycees*, 614 F.Supp. 515 (N.D.Iowa 1985), *aff'd on other grounds*, 794 F.2d 379 (8th Cir.1986), relying upon our *Good v. Iowa Civil Rights Commission*, 368 N.W.2d 151 (Iowa 1985), the court refused to certify to this court a question which constitutes one-half of the issue here under consideration: whether the United States Jaycees is a public accommodation under Iowa law. 614 F.Supp. at 516. The federal district court, finding sufficient guidance in *Good,* proceeded to answer that question in the affirmative.

We do not believe, however, that *Good* controls the present issues. *Good* addressed only the issue of whether an exchange program operated by a local rotary club amounted to a "public accommodation" within our civil rights statute. 368 N.W.2d at 152, 153–54. That case did not go so far as to determine whether the rotary club itself was a public accommodation. Nor does *Good* discuss when a membership organization is a public accommodation.

Initially, we note the clear distinction between the present issue and that which recently faced the United States Supreme Court in *Board of Directors of Rotary International v. Rotary Club of Duarte,* —— U.S. ——, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987), and *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). In *Rotary*, the California Court of Appeal had concluded that both the Rotary International and the local affiliate there involved were "business establishment[s]" subject to the antidiscrimination provision of that state's Unruh Civil Rights Act. *See Rotary,* —— U.S. at ——, 107 S.Ct. at 1944–45, 95 L.Ed.2d at 482; Cal.Civ.Code § 51 (West 1982). The United States Supreme Court proceeded from that point to decide whether the Unruh Act, as so interpreted, violated the first amendment to the federal constitution. In *Jay-*

*cees,* the Minnesota Supreme Court had held the Jaycees organization to be a "public business facility" within the ambit of that state's civil rights statute, largely because the Jaycees sells goods and extends business privileges in exchange for annual membership dues. *See United States Jaycees v. McClure*, 305 N.W.2d 764, 768–74 (Minn.1981). Both *Rotary Club* and *Roberts,* therefore, presented the Court with constitutional issues arising from statutes which had been construed by state courts to apply to membership organizations. In neither case, of course, was the Court faced with the question of statutory construction. As a result of the narrow constitutional issues presented in those cases, anything said by the Court, notwithstanding its constitutional significance, is clearly neither controlling nor immediately pertinent to the present issue.

The issue here is whether this membership organization is a "public accommodation" and not whether a public accommodation can be operated by a membership organization. Several courts have faced the issue of whether the United States Jaycees comes within the parameters of similar statutes. Each of those cases dealt with language which defined "public accommodation" in terms of "place." *See United States Jaycees v. Richardet*, 666 P.2d 1008, 1009 n. 2 (Alaska 1983); *United States Jaycees v. Bloomfield*, 434 A.2d 1379, 1381 (D.C.App.1980); *United States Jaycees v. Massachusetts Comm'n Against Discrimination*, 391 Mass. 594, 595 n. 1, 463 N.E.2d 1151, 1152 n. 1 (1984); *United States Jaycees v. McClure*, 305 N.W.2d 764, 766 (Minn.1981). While lacking unanimity, the weight of these cases is against statutory inclusion. *Compare Richardet*, 666 P.2d at 1011–12 (Jaycees not within statute); *Bloomfield*, 434 A.2d at 1381–83 (Jaycees not within statute); *Massachusetts Comm'n*, 391 Mass. at 600–08, 463 N.E.2d at 1155–60 (Jaycees not within statute) *with McClure*, 305 N.W.2d at 768–74 (Jaycees within statute).

Our statute is arguably somewhat broader than those dealt with in these cases, as it extends to "establishment[s]" and "facil-

it[ies]" as well as to "place[s]." Iowa Code § 601A.2(10) (1981). Balanced against these linguistic additions, however, is the doctrine of *noscitur a sociis*, which provides that the meanings of statutory terms are ascertained in light of the meaning of words with which they are associated. *See, e.g., Wright v. State Bd. of Eng'g Examiners*, 250 N.W.2d 412, 413–14 (Iowa 1977). In addition, we construe nontechnical words consistent with approved usage. Iowa Code § 4.1(2) (1981). Statutes should be given their ordinary meaning unless defined by the legislature or possessed of a particular and appropriate meaning in law. *E.g., Good*, 368 N.W.2d at 155.

A contrary position on this latter canon of construction pursuaded the Minnesota Supreme Court to hold that the United States Jaycees were within the statutory "place of public accommodation" definition in *McClure*. There, the court rejected the Jaycees' definitional contentions by stating that such an "argument substitutes a literal, ordinary definition of 'place of public accommodation' for the one enacted by the legislature." 305 N.W.2d at 772. Absent a manifest contrary legislative intent, however, we are bound by such common understandings of statutory terms. *E.g., Casteel v. Iowa Dep't of Transp.*, 395 N.W.2d 896, 898 (Iowa 1986). We are persuaded by the literal and ordinary definition of the statutory term that the United States Jaycees is not a "place" within our definition of "public accommodation." *See Webster's Third New Int'l Dictionary* 1727 (1976) ("place" defined as a "physical environment"). Similarly, we do not think the organization is either an "establishment," *see Plew v. James Horrabin & Co.*, 176 Iowa 584, 588–89, 157 N.W. 453, 455 (1916) ("establishment" defined in terms of "place"); *Webster's Third Int'l Dictionary* 778 ("a more or less fixed and usually sizable place of business or residence together with all the things that are an essential part of it."), or a "facility," *see Webster's Third New Int'l Dictionary* 812–13 ("something (as a hospital, machinery, plumbing) that is built, constructed, installed or established to perform some particular function or to serve or facilitate

some particular end."). The ordinary usage of these terms connotes a spatial dimension which the Jaycees' membership, as such, does not possess.

Moreover, we believe the most reasonable interpretation of the statutory definition as a whole compels us to adopt petitioners' argument. We note that the statute which our current civil rights act replaced in 1965 confined its protection to places only. That earlier statute, Iowa Code § 735.1 (1962), provided that

> [a]ll persons within this state shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities, and privileges of inns, restaurants, chophouses, eating houses, lunch counters, and all other places where refreshments are served, public conveyances, barbershops, bathhouses, theaters, and all other places of amusement.

This provision had been a part of our jurisprudence for many years. *See, e.g.*, Iowa Code § 5008 (1897). Our current statute substantially mirrors one advocated in a 1964 law review article. *See* Bonfield, *State Civil Rights Statutes: Some Proposals*, 49 Iowa L.Rev. 1067, 1101 (1964). Professor Bonfield suggested the new language in order to avoid application of canons of statutory construction which would narrow the protections available under the statute:

> The essential difficulty in the coverage of this state's public accommodations statute is its unduly restricted nature. "Having named such things as lodging houses, restaurants and places of amusement ... the expression 'expressio unius est exclusio alterius' is applicable." In other words, because the public accommodations provision specifically enumerated "all ... places where refreshments are served, public conveyances, barber shops, bathhouses ... and all ... places of amusement," it necessarily meant to exclude from its operation those facilities not so listed. Consequently, many kinds of establishments catering to the public generally for a pecuniary quid pro quo are left untouched by this provision; they retain an unfettered discretion to

discriminate among their patrons on such bases as race, religion, or ethnic background. Among these places open to the general public for a fee that are exempt from the proscriptions of the Iowa Civil Rights Act are retail stores of all kinds, reducing salons, beauty shops, parking lots, gas stations, schools, health clinics, doctors' and dentists' offices, hospitals, banks, loan companies, lawyers' offices, real estate brokers' offices, employment agency offices, and many, many others.

There is no reason why the kinds of establishments catering to the public for a fee that are beyond the coverage of Civil Rights Act should remain so. In reconciling the conflict between the entrepreneur's freedom of association and others' rights to equal opportunity, the accommodation worked under this provision seems inadequate.

*Id.* at 1099. Nothing in this rationale evinces a concern for coverage of membership organizations such as the Jaycees.

In addition, we think an amendment of subsection 601A.2(10), effective July 1, 1984, further supports our conclusion that a "public accommodation" does not include membership organizations such as the Jaycees. *See, e.g., Slockett v. Iowa Valley Community School Dist.*, 359 N.W.2d 446, 448 (Iowa 1984) (statutory amendment as to minor details casts light on legislature's earlier intent). That amendment, with deletions struck through and additions underscored, reads as follows:

(a) *"Public accommodation"* means each and every place, establishment, or facility of whatever kind, nature, or class that caters or offers services, facilities, or goods ~~to the general public~~ for a fee or charge *to nonmembers of any organization or association utilizing the place, establishment, or facility,* provided that any place, establishment or facility that caters or offers services, facilities, or goods to the ~~general public~~ *nonmembers* gratuitously shall be deemed a public accommodation if the accommodation receives ~~any substantial~~ governmental support or subsidy. Public accommodation shall not mean any bona fide private club or other place, establishment or

facility which is by its nature distinctly private, except when such distinctly private place, establishment, or facility caters or offers services, facilities, or goods to the ~~general public~~ *nonmembers* for fee or charge or gratuitously, it shall be deemed a public accommodation during such period.

1984 Iowa Acts ch. 1096, § 1. This amendment obviously clarifies the distinction between the "place, establishment, or facility" which qualifies as a "public accommodation" and the "organization or association" which uses the accommodation. In this vein, while we note the Iowa Jaycees maintain an office in this state—a physical facility—this case fails to allege discrimination in the use of that facility.

We hold that the United States Jaycees and the Iowa Jaycees do not qualify as "public accommodation[s]" within Iowa Code section 601A.2(10). At this point, we must recognize we are limited by the very nature of our judicial power. It is not our function to rewrite a statute. *E.g., State v. Kueny,* 215 N.W.2d 215, 219 (Iowa 1974). If changes in a law are desirable from a standpoint of policy or mere practicality, it is for the legislature to enact them, not for the court to incorporate them by interpretation. *E.g., State v. Wedelstedt,* 213 N.W. 2d 652, 656–57 (Iowa 1973). Our conclusion today renders it unnecessary for us to address the remainder of petitioners' arguments as well as respondent's cross-appeal. We reverse this case and remand it to the agency with directions to dismiss respondent's complaint for want of jurisdiction.

REVERSED AND REMANDED.

All justices concur except HARRIS, J., joined by CARTER, J., who concur specially, and NEUMAN, J., joined by LARSON, SCHULTZ, and LAVORATO, JJ., who dissent, and SCHULTZ, J., joined by LARSON and LAVORATO, JJ., who dissent.

HARRIS, Justice (concurring).

I agree with the majority opinion but feel obligated to write separately to respond to the dissent. The dissent's characterization

of the basis for the majority holding strikes me as inaccurate and unfortunate.

In years past the petitioners' organizations adhered to a membership policy which has since been discredited. The policy is not at issue here; our question is whether the civil rights commission had authority to assess $39,000 in damages against the Jaycees as a result of the position previously followed.

Unless the assessment of damages can be justified alone on our disapproval of the discredited policy, it must be based on some recognized legal principle. The vehicle chosen by the litigants is an Iowa statute. The controlling question is one of legislative intent. When it adopted the Iowa civil rights Act in 1965, did the legislature intend for the term "public accommodation" to include member organizations, such as the Jaycees? The statutory definition, quoted in the majority opinion, is simply not susceptible of that interpretation.

In recognizing this, the majority does not depart in any way from this court's long tradition of protecting human liberties. Our present views on the social appropriateness of that legislative decision do not bear on the question of what the legislature intended when it enacted the statute. Neither should our understanding of that intent be controlled by subsequent pronouncements on what the law has since become, which is something very different from what the legislature envisioned. Although the dissenters may be justified in applauding the development, they are not justified in using their approval of the change to retroactively describe a legislative intent.

Neither is *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), authority for interpreting Iowa's civil rights Act in contravention of its expressed wording. *Roberts* stands only for the proposition that the federal courts are not to interfere, on grounds of right of association under the first amendment, with a state court interpretation of its own statute. Although the first amendment does not *prohibit* the commission's interpretation of the statute, the plain words chosen by the legislature clearly do. This is the only "message" in the majority opinion.

CARTER, J., joins this concurrence.

NEUMAN, Justice (dissenting).

The majority's opinion departs so dramatically from this court's proud history of leadership in the field of civil rights—and especially with regard to freedom from discrimination in accommodations—that I must respectfully dissent.[1]

The issue, of course, is whether a membership organization like the Jaycees comes within the ambit of "public accommodation" as defined in our civil rights statute. I would readily concede that the term "public accommodation" commonly connotes the "spatial dimension" upon which the majority's narrow gaze is fixed. But I am convinced that the legislature did not mean to confine the proscriptions of section 601A.7 to structures built of bricks and mortar. By its terms, the statute also prohibits the discriminatory refusal to furnish "advantages, ... services, or privileges" because of "race, creed, color, sex, national origin, religion or disability" by any "establishment or facility of whatever kind, nature, or class." Iowa Code §§ 601A.7(1)(a), 601A.2(10).

The majority summarily dismisses the Jaycees as an "establishment," in apparent satisfaction with *Webster's Third International Dictionary* definition of the term as "a more or less fixed ... place of business or residence." I think it noteworthy that a

---

1. In 1873 we rejected the notion that freedom from racial discrimination in riverboat accommodations was no more than a social privilege, unprotected by our constitution:

   It cannot be doubted that [plaintiff] was excluded from the table and cabin, not because others would have been degraded and she elevated in society, but because of prejudice entertained against her race, growing out of its former condition of servitude—a prejudice, be it proclaimed to the honor of our people, that is fast giving way to nobler sentiments, and, it is hoped, will soon be entombed with its parent, slavery.

   *Coger v. The N.W. Union Packet Co.*, 37 Iowa 145, 158 (1873).

more recent edition of Webster's offers an appreciably different slant on the term's common usage: something established; a settled arrangement; a permanent civil or military organization; a place of business or residence with its furnishings and staff; a public or private institution; an established order of society, e.g., a group of social, economic, and political leaders who form a ruling class; a controlling group; the act of establishing; the state of being established. *See Webster's Ninth New Collegiate Dictionary* 425 (1986).

Much more than a duel of dictionaries, however, is at stake. The Minnesota Supreme Court, interpreting a very similar civil rights statute in the identical context, observed:

> The national organization contends that only if it were to "establish a business at a physical location within the State of Minnesota, and invite the patronage of the general public * * *" would that "place" or "facility" constitute a place of public accommodation under Minn.Stat. § 363.01(18) (1980). That argument substitutes a literal, ordinary definition of "place of public accommodation" for the one enacted by the legislature....

> Food and lodging do not exhaust the category of a "business * * * facility of any kind * * * *whose* goods, * * * *privileges,* [and] *advantages* are * * * sold or otherwise made available to the public." Leadership skills are "goods," business contacts and employment promotions are "privileges" and "advantages" and each site in the State of Minnesota where the sale of those "goods" is solicited, promoted, and consummated is unquestionably a "business facility."

*United States Jaycees v. McClure,* 305 N.W.2d 764, 771–72 (Minn.1981) (citations omitted).

On the Jaycees' appeal from the *McClure* decision, the United States Supreme Court affirmed the Minnesota court's reasoning, stating:

> This expansive definition reflects a recognition of the changing nature of the American economy and of the impor-tance, both to the individual and to society, of removing the barriers to economic advancement and political and social integration that have historically plagued certain disadvantaged groups, including women. Thus, in explaining its conclusion that the Jaycees local chapters are "place[s] of public accommodations" within the meaning of the Act, the Minnesota court noted the various commercial programs and benefits offered to members.... Assuring women equal access to such goods, privileges and advantages clearly furthers compelling state interests.

*Roberts v. United States Jaycees,* 468 U.S. 609, 626, 104 S.Ct. 3244, 3254, 82 L.Ed.2d 462, 476–77 (1984) (citations omitted).

The majority discounts such observations as irrelevant to the question of whether, as a matter of semantics, a membership organization can be synonymous with public accommodation. But lest there be any mistake concerning the Supreme Court's attitude on the subject, we would be wise to consider the Court's 1987 decision in *Board of Directors of Rotary International v. Rotary Club of Duarte,* 481 U.S. ——, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987). There the Supreme Court considered a challenge to Rotary's male-only membership policy in light of California's Unruh Civil Rights Act which provides, in part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal.Civ.Code § 51 (West 1982). Although the case principally focused on the Rotarians' claimed right of intimate association under the first amendment, the Court did not ignore the underlying purpose of California's anti-discrimination statute:

> In *Roberts* we recognized that the State's compelling interest in assuring equal access to women extends to the acquisition of leadership skills and business contacts as well as tangible goods

and services. The Unruh Act plainly serves this interest.

*Id.* at ——, 107 S.Ct. at 1948, 95 L.Ed.2d at 487 (citations omitted).

Given the opportunity of choosing this broader view of public accommodation as a way of pursuing "the profoundly important goal of ensuring nondiscriminatory access to commercial opportunities in our society," *see New York State Club Ass'n, Inc. v. City of New York,* —— U.S. ——, ——, 108 S.Ct. 2225, 2237, 101 L.Ed.2d 1, 19 (1988) (O'Connor, J. concurring), the majority chose instead to adhere to the restrictive notion that a place is a place is a place. We may fault the legislature for such a narrow definition, but by failing to construe our civil rights statute "broadly to effectuate its purposes," *see* § 601A.18, the majority has sent a message to the people of Iowa that Jaycees' and Rotary's newly adopted, nondiscriminatory membership policies were a pointless exercise in this state. I cannot join in ascribing to the legislature such an unenlightened view.

LARSON, SCHULTZ, and LAVORATO, JJ., join this dissent.

SCHULTZ, Justice (dissenting).

I concur with Justice Neuman's dissent, but I believe that an additional point is warranted. The Iowa Civil Rights Commission concluded that the parent Jaycees were "public accommodations" as defined in Iowa Code section 601A.2(10) (1981) and therefore are subject to the anti-discrimination provisions of Iowa Code chapter 601A. We previously approved an interpretation of section 601A.2(10) by the same agency and stated "[a]lthough construction of this statute is a function of the courts, we have always held that a reviewing court should give appropriate weight to the judgment of agencies charged with the special duty of administering a particular statute." *Good v. Iowa Civil Rights Comm'n,* 368 N.W.2d 151, 155 (Iowa 1985) (citations omitted). The majority opinion afforded no weight to the agency interpretation and ignores this principle of statutory construction. I would give the appropriate weight to the

agency's conclusion that this statute applies to the parent Jaycees. Its interpretation coincides with the meaning of the statute as it is understood in contemporary times.

LARSON and LAVORATO, JJ., join this dissent.