**Captain Michael C. SPENCE, Plaintiff,**

v.

**SOUTHEASTERN ALASKA PILOTS'
ASSOCIATION, et al.,
Defendants.**

**No. J90–004 Civil.**

United States District Court,
D. Alaska.

March 30, 1992.

Paul L. Dillon, Dillon and Findley, Juneau, Alaska, for plaintiff.

C.L. Cloudy, Trevor N. Stephens, Ziegler, Cloudy King & Peterson, Ketchikan, Alaska, W.G. Ruddy, Kathryn Kolkhorst, Ruddy, Bradley & Kolkhorst, Juneau, Alaska, for defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, District Judge.

## I. INTRODUCTION.

This cause comes before the court on motion for summary judgment filed March 15, 1991 (Docket No. 81), by defendants Southeastern Alaska Pilots' Association, et al. ("SEAPA"); on cross-motion for summary judgment, filed June 21, 1991 (Docket No. 90), by plaintiff Michael Spence; on motion to strike cross-motion for summary judgment, filed July 12, 1991 (Docket No. 96), by defendants; on motion for request for judicial notice, filed September 3, 1991 (Docket No. 110), by plaintiff and on motion for request for judicial notice, filed March 11, 1992 (Docket No. 155), by defendants; and on motion to allow supplemental pleadings, filed November 18, 1991 (Docket No. 131), by plaintiff. The court heard oral argument on the summary judgment motions December 6, 1991 at Anchorage, Alaska. For the reasons stated below, the motions for summary judgment are granted in part, and denied in part; the motion to strike is denied; the requests for judicial notice are granted; and the motion to allow supplemental pleadings is granted. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1.

## II. BACKGROUND.

The court relies on the background statement included in its order of December 11, 1990, 789 F.Supp. 1007 (D.Alaska 1990) (Docket No. 63) in addition to the background information below.

Plaintiff filed his complaint April 25, 1990. Claims one through four allege violations of state and federal anti-trust statutes asserting illegal restraint of trade and monopoly as violations of the Sherman Act, 15 U.S.C. §§ 1 and 2, and violations of the Clayton Act, 15 U.S.C. §§ 15 and 26. Claims five through eight are state law claims for breach of fiduciary duty; for an antitrust violation pursuant to the Alaska Monopolies and Restraint of Trade Act, Alaska Statute ("A.S.") 45.50.562 *et seq.*; for punitive damages for restraint of trade violation, for breach of contract, for defamation and for violation of his constitutional rights; for violation of state constitutional rights to pursue livelihood and due process pursuant to Article I, § 1 of the Alaska Constitution; and for torts of defamation, libel and slander.

In July, 1991 the Governor of Alaska signed into law SCS CSHB 194 (L & C) ("Pilot Bill"). The Pilot Bill revises the Alaska Marine Pilot Act in several respects. Pilot associations must now be open to any licensed pilot. A pilot must

belong to a pilot association. The pilot board must approve a pilot association's bylaws and rules, and the pilot association must be recognized by the Alaska Board of Marine Pilots. Training programs for pilots and deputy pilots are to be established, and pilot organizations must operate or participate in such a program.

Defendants filed a motion for mootness arguing that because of the revisions made in the Pilot Bill and because of plaintiff's resignation from SEAPA, all of plaintiff's claims were moot. At oral argument and in opposition to defendants' motion for mootness, plaintiff argued that the case is not moot because it is possible for the court to grant relief to plaintiff. Because the court agreed that issues remained, the motion for mootness was denied.

Plaintiff argued in his opposition to the motion for mootness that a controversy exists surrounding the meeting of SEAPA where bylaws were changed regarding investment fund withdrawals. The controversy includes whether the meeting was properly noticed, whether the proxies were valid and whether plaintiff timely submitted his resignation prior to the vote. Plaintiff claims the court can grant him relief by concluding that the special meeting called by SEAPA was improper, that he timely resigned, that SEAPA return his investment funds and that the decision of SEAPA regarding his suspension be removed from his record. Included in plaintiff's argument regarding the investment issue is the claim that defendants' decision to change its policy on investment funds is directly linked to the amount defendants claim it would have been damaged by withholding plaintiff's suspension.

Defendants had argued, in part, that plaintiff's resignation from SEAPA and the recent revision of the Pilot Bill settled the issues in this case. The court finds that questions of fact exist on whether the special meeting held by SEAPA was properly noticed, whether the proxies were valid and whether plaintiff resigned prior to or subsequent to the decision to change investment fund policy. Further, the court finds that in order to determine whether defen-

dants' actions suspending plaintiff were proper, and were not a result of a restraint of trade or monopoly, the antitrust issues need to be addressed. Because the court finds, as discussed below, that questions of fact remain on plaintiff's antitrust and other claims, there remains a "case or controversy."

## III. DISCUSSION.

### A. *Supplemental Pleadings.*

██ Plaintiff requests the court to accept two supplemental affidavits in support of his summary judgment motion. Plaintiff submits that certain events occurred subsequent to the filing of his summary judgment motion which are related to the issues on said motion. Plaintiff contends that defendants filed misleading, forged and improper exhibits, and that the witness testimony of defense counsel requires disqualification of Mr. C.L. Cloudy and the firm of Ziegler, Cloudy, King and Peterson pursuant to Alaska Bar Code of Professional Responsibility, DR 5–102. Defendants oppose the motion, arguing that the exhibits filed were not misleading, forged or improper.

The court does not agree with plaintiff's allegations that the exhibits filed by defendants were forged, misleading or improper. However, in order to make that determination, the court had to rely on the supplemental pleadings filed by plaintiff and the documents filed by defendants in opposing plaintiff's motion. Therefore, the court grants plaintiff's motion to allow supplemental pleadings. Further, the court took into consideration the supplemental pleadings and supporting arguments when it considered the motions for summary judgment.

██ Plaintiff also seeks the disqualification of defendants' counsel and counsel's law firm pursuant to Alaska Bar Code of Professional Responsibility DR 5–102. It is not clear in plaintiff's motion which subsection of that rule he seeks defense counsel's disqualification. Plaintiff asserts in his motion that witness testimony of defense counsel requires disqualification. It

is not until plaintiff files his reply that he further explains his reference to "witness testimony" of defense counsel.

Plaintiff maintains in his reply brief that counsel for defense has been on plaintiff's witness list since October, 1990. Plaintiff argues that defense counsel claims to have had conclusive proof that plaintiff collaborated with Captain Bennett and his attorney, and that this allegation was a key part in defendants' successful effort to prejudice the membership against plaintiff. In addition, plaintiff claims that defense counsel was instrumental in the preparation and filing of charges against plaintiff. Further, plaintiff contends that defense counsel acted as prosecuting attorney, ruled on objections and drafted the hearing panel's decision regarding plaintiff's hearing with SEAPA. Plaintiff concludes that defense counsel was an integral player in the charges brought against plaintiff, in the hearing process, and in the resulting hearing board decision.

Because defendants did not have the opportunity to address the arguments made in plaintiff's reply brief, the court cannot find on the record before it that disqualification of Mr. Cloudy is appropriate. To the extent that plaintiff seeks Mr. Cloudy's disqualification, that motion is denied without prejudice.

### B. *Motion to Strike.*

■ Defendants filed a motion to strike, pursuant to Fed.R.Civ.P. 12(f) and 16(e) and (f), plaintiff's cross-motion for summary judgment. Defendants argue that plaintiff filed his cross-motion after the date set for filing. Plaintiff asserts that, pursuant to Fed.R.Civ.P. 56(a), after service of a motion for summary judgment, the adverse party may move for summary judgment in the party's favor, and further that such a rule should take precedence over the court's scheduling order.

In the interests of justice, the court's concern is determining motions before it on the merits. The court agrees that a more appropriate course of action that plaintiff may have taken in the above situation would have been to file an appropriate motion requesting leave to file his cross-motion. However, upon review of plaintiff's brief cross-motion, the defendants' very brief opposition and the plaintiff's reply, it can hardly be said that plaintiff "had the last shot." No new arguments were presented in the plaintiff's cross-motion; the arguments made focused on those already presented in defendants' summary judgment motion. Therefore, in the present case, defendants' motion to strike plaintiff's cross-motion for summary judgment is denied.

### C. *Motion/Cross–Motion for Summary Judgment.*

The court notes at the outset that neither party complied with Local General Rule 5(F). That rule requires the party opposing a summary judgment motion to submit an accompanying statement of genuine issues which "clearly, concisely, completely and candidly" state the "contested issues of material facts which must be tried." Plaintiff did not submit an accompanying statement. Plaintiff contends that his opposition fully addresses the points made in defendants' summary judgment motion. The rule, however, states that the person opposing the summary judgment motion shall simultaneously file a statement of genuine issues. This suggests that either a separate document should be filed setting forth the contested issues or, at the least, the contested issues, if included in the opposition discussion, are separately enumerated and not made a part of the general argument.

Defendants filed what appears to be an accompanying statement of genuine issues with its opposition to plaintiff's cross-motion for summary judgment. However, a brief review of defendants' submission evidences a lack of compliance with the rule. Defendants' statements are simply an outline of the arguments presented in its brief. The court advises counsel to follow the rule in future summary judgment practice in this court.

Defendants seek summary judgment on all claims in plaintiff's complaint. Defendants submit that the disciplinary proceed-

ings against plaintiff were proper; that defendants were not engaged in a monopoly or restraint of trade; and that defendants have not defamed plaintiff or breached any duty owed to plaintiff or the general SEAPA membership. Plaintiff seeks summary judgment on all the same issues.

The court will rely on its statement of the standard for a motion on summary judgment as set forth in its order filed December 11, 1990, in addition to the following statements. Antitrust cases are generally difficult to resolve on summary judgment. *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991), citing *Rickards v. Canine Eye Registration Foundation, Inc.*, 783 F.2d 1329, 1332 (9th Cir. 1986), *cert. denied*, 479 U.S. 851, 107 S.Ct. 180, 93 L.Ed.2d 115 (1986). There are occasions, however, where summary judgment is appropriate on antitrust claims. *Id.* (Citations omitted.)

### 1. Restraint of Trade.

Defendants assert that plaintiff cannot prove the elements of his restraint of trade claims, or that the restraint of trade claims fail to state a claim for which relief can be granted. Plaintiff contends that no genuine issues of material fact exist on the restraint of trade claims, and that plaintiff's cross-motion for summary judgment should be granted as to those claims.

 Section one of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade." 15 U.S.C. § 1 (1988).[1] Whether the alleged violation violates section one depends on whether the restraint is unreasonable. *Board of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683 (1918). To establish a claim under § 1 of the Sherman Act, the plaintiff must show (1) that there was a contract, combination or conspiracy; (2) that the agreement unreasonably restrained trade under the per se rule of illegality or a rule of reason analysis; and (3) that the restraint affected interstate

commerce or injured competition. *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 632–633 (9th Cir.1987).

 Once the plaintiff establishes these elements, "the factfinder must weigh the anticompetitive effects and procompetitive effects or business justifications advanced for the challenged restraint to determine whether it is unreasonable." *Les Shockley Racing, Inc. v. National Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir.1989). The focus is on "the actual effects that the challenged restraint has had on competition in a relevant market." *Bhan*, 929 F.2d at 1410.

#### a. Contract, Combination or Conspiracy.

 Before determining whether plaintiff has shown there was a contract, combination or conspiracy, the threshold question is whether SEAPA and its members are capable of conspiring with each other. If the entity is not capable of conspiring, then it would not be necessary for plaintiff to show that a conspiracy existed.

The United States Supreme Court in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) determined that the activity of a parent corporation and its wholly owned subsidiary are to be viewed as a single economic unit for the purposes of § 1 of the Sherman Act. Because the corporation and the wholly owned subsidiary were a single economic unit, the Court held that no violation of § 1 of the Sherman Act could occur.

In *Copperweld*, the parent corporation Copperweld purchased Regal Tubing from Lear Siegler. Lear Siegler had operated Regal Tubing as an unincorporated division. Prior to the purchase, David Grohne, an officer of Lear Siegler, formed the respondent corporation, Independence Tubing Company, which competed with Regal Tub-

---

**1.** Section 1 and the comparable state act are similar. The Alaska courts look to federal precedent in applying the state statute. *See KOS v. Alyeska Pipeline Service Co.*, 676 P.2d

1069 (Alaska 1983). The court's discussion of the federal law applies equally to plaintiff's state law claims under the comparable state acts.

ing. Part of the sales agreement included a condition that Lear Siegler would not compete with Regal for five years. After the sale, when Copperweld discovered that respondent had given a purchase order to Yoder Company, Copperweld sent a letter to Yoder explaining the noncompetition clause and told Yoder it would take necessary steps to protect its interest. Yoder voided the contract with respondent. Respondent then filed suit against Copperweld, Regal and Yoder. Yoder was subsequently exonerated from antitrust liability. This left a parent corporation and its wholly owned subsidiary as the parties to the § 1 conspiracy. The Court determined that there was not enough separation between the two entities to treat them as independent actors. Therefore, the Court concluded that the two entities were incapable of conspiring with each other.

In *Bolt v. Halifax Hospital Medical Center,* 891 F.2d 810 (11th Cir.1990), the eleventh circuit determined that a hospital was legally capable of conspiring with members of its medical staff for purposes of § 1 of the Sherman Act. In that case, plaintiff was a physician whose medical staff privileges were revoked at three hospitals where he previously had been granted privileges. Plaintiff filed suit, including antitrust claims, against each of the hospitals. A recommendation of whether to grant reappointment or elevation to permanent status, or to revoke privileges, was made to an executive committee by a credentials committee composed of active staff members. The executive committee was also composed of active staff members. If the executive committee came to a conclusion adverse to the physician, a judicial committee was established. This committee was also composed of active staff members. The recommendations of all of the above committees were sent to the hospitals' governing board, which made the final decision.

Plaintiff alleged conspiracies involving two of the hospitals and the members of its medical staff who took part in the peer review decision to revoke his privileges, and a conspiracy involving each of the three hospitals and its medical staff members who took part in the peer review decision, including the county medical society.

Defendants argued that the hospitals and its medical staff were legally one entity and therefore incapable of concerted action within the meaning of § 1 of the Sherman Act. The court concluded that it could perceive no basis for holding that the members of a medical staff are legally incapable of conspiring with one another. The court considered as factors the evidence that each member practices medicine in his individual capacity, and that each is a separate economic entity potentially in competition with each other. The court further concluded that a hospital is legally capable of conspiring with the members of its medical staff, and distinguished the corporate cases where it has been held that corporations are incapable of conspiring with its directors or officers.

In the present case, defendants seek summary judgment on the issue of whether SEAPA and its members are capable of conspiring with each other. Defendants rely on *Copperweld* and other cases to submit that SEAPA and its members are a single economic unit which renders its officers and directors incapable of conspiring with SEAPA and with each other. Defendants cite as factors supporting this view that SEAPA members have combined their resources and productive capabilities to promote a common unified economic endeavor; that the members have agreed not to compete with each other; that members are dispatched only through SEAPA; that members deal with ship agents only through SEAPA; that members deal with the pilot board only through SEAPA; and that members experience competitive gains and losses through SEAPA.

Plaintiff counters in his opposition that SEAPA is comprised of twenty-one independent contractors who are potential competitors at the same market level that have agreed not to compete. Plaintiff contends that this case is similar to *Bolt,* among others. Plaintiff argues that members of SEAPA can be analogized to the members of the hospital staff with SEAPA in the role of the hospital. Further, plaintiff ar-

gues, that SEAPA is a separate legal entity capable of conspiring with its members, and that the members are capable of conspiring with each other.

Defendants have not provided argument how it can analogize the cases involving two entities, such as in *Copperweld* and others, with the association at issue in this case. There is nothing to indicate in the briefing that the court must decide whether two entities can be considered one for the purposes of § 1 of the Sherman Act. Rather, defendants rely solely on the conclusions reached in *Copperweld* and other similar corporate cases, and not on the courts' reasoning in those cases to support its single economic unity argument. Here the court must decide whether there is a material issue of fact whether SEAPA, as an association, is capable of conspiring with its members, and whether the members are capable of conspiring with each other.

Facts agreed upon in this case are that members of the association are independent contractors. But for their membership in the association, the member pilots would be competing with each other. SEAPA acts as an agent for its pilots to arrange pilotage with vessels, although the pilots are under direct hire of the vessel and do not work for SEAPA. SEAPA pools income and expenses of the members and then distributes the net income to individual pilots according to the pilot's dispatch classification.

Relying on these facts and the law, the court agrees that SEAPA and its members, as independent contractors, who but for their association in SEAPA would be potential competitors, are capable of conspiring with each other. Therefore, defendants' motion for summary judgment as to this issue is denied, and plaintiff's cross-motion for summary judgment as to this issue is granted.

 The second question is whether plaintiff has alleged a conspiracy for the purposes of meeting the first element necessary to prove a § 1 Sherman Act violation. Plaintiff must establish there was a conspiracy. A plaintiff may rely on either direct or circumstantial evidence to carry his burden of proof. *American Tobacco Co. v. United States*, 328 U.S. 781, 809–10, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946). Circumstantial evidence can include evidence of irrational conduct that would create an inference of conspiracy. *Bolt*, 891 F.2d at 819. The plaintiff must show a non-legitimate motive for entering such a conspiracy. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596–97, 106 S.Ct. 1348, 1361, 89 L.Ed.2d 538 (1986).

Defendants contend that plaintiff cannot prove the alleged oral agreement to limit the number of pilots who qualify for licenses; that SEAPA fixed tariff prices; or that SEAPA has not boycotted plaintiff but has only treated him in accordance with the contract. In support of its position, defendants submitted copies of SEAPA's bylaws and operating rules and affidavits of SEAPA members.

Plaintiff's complaint lists several agreements, written and oral, which plaintiff alleges show an agreement to restrain trade. Among the agreements listed are the bylaws, articles and operating rules of SEAPA, in addition to the written decision of the board to suspend a pilot. The oral agreements include, but are not limited to, the agreement to suspend members who challenge decisions of the board, agreements to limit the number of pilots allowed to join the association, and agreements to limit the number of pilots able to qualify for a state pilot's license.

Plaintiff submits that the written agreement to suspend him from piloting for thirty days would have resulted in a decrease in competition and a resulting financial benefit to defendants. This agreement, among the others cited by defendants, is evidence of a conspiracy according to plaintiff. To support plaintiff's argument, plaintiff submitted several affidavits of other pilots. The affidavit of William Swan suggests that at a SEAPA meeting held sometime prior to the hearing on plaintiff's suspension, discussion occurred concerning certain actions of plaintiff, and that there existed a great deal of animosity towards plaintiff in those discussions. There is also

evidence in the record that SEAPA intended to exclude pilots. *See* Affidavits of Bennett and Homer.

The court finds that issues of fact remain on the first element of the § 1 Sherman Act antitrust claim. Reasonable minds could differ on the evidence in the record whether there was "irrational conduct [which] create[s] an inference of conspiracy." *Bolt*, 891 F.2d at 819. Defendants do not rebut Swan's affidavit but merely dismiss it as irrelevant. That affidavit suggests that many members of SEAPA had strong animosity towards plaintiff with an eye towards taking some action against him. It was not a unilateral decision or action. Although defendants subsequently agreed not to suspend plaintiff, defendants claim to have suffered damages in the amount of $25,000 as a result of placing plaintiff back on the dispatch roles. This suggests that defendants' agreement to suspend plaintiff would have economically benefited defendants. *See Winn v. Edna Hibel Corp.*, 858 F.2d 1517, 1519 (11th Cir. 1988). This evidence is in contrast to the evidence provided by defendants which suggests that there was not an agreement to boycott plaintiff, but that it was simply a disciplinary action. Therefore, motions for summary judgment as to the first element for a § 1 Sherman Act claim are denied.

### b. Unreasonable Restraint of Trade.

 The first question is whether defendants' alleged activities restrained trade. If so, the next question is whether the restraint was reasonable or unreasonable.

Defendants submit that the second element that plaintiff must prove is self-explanatory; that plaintiff must prove the alleged concerted activity was actually intended to harm or unreasonably restraint competition. As to the facts, defendants argue that the undisputed evidence demonstrates that SEAPA's actions were not intended to harm or unreasonably restrain competition. Defendants submit that plaintiff was not suspended for assisting non-member pilots to compete against SEAPA but that he was suspended for assisting those pilots in their pursuit of costly litigation against SEAPA. Defendants also deny that plaintiff was suspended for competing against SEAPA, but instead plaintiff was suspended, in part, for using SEAPA for his personal interests. In addition, defendants contend plaintiff cannot prove that the written agreements to discipline members who compete with SEAPA, to limit the number of SEAPA members, to not compete with each other, and to allocate the work available among the members intended to harm or restraint competition. Defendants submit that such restraints are limited only to members and have no effect on competition in general.

Plaintiff argues that written agreements not to compete are intended to restrain competition, and that, in fact, defendants' reasoning that their agreements were made to "overcome the disadvantages of the free or competitive system" in the southeastern Alaska pilot market shows intent to restrain competition. Defendants' Opposition, Docket No. 43, citing *Kotch v. Board of River Port Pilot Commrs.*, 330 U.S. 552, 561 n. 22, 67 S.Ct. 910, 914 n. 22, 91 L.Ed. 1093 (1947). Plaintiff further argues that defendants' decision to discipline plaintiff by suspending him from piloting for thirty days would decrease competition among the other pilots with a financial gain to SEAPA. In addition, such a suspension, plaintiff submits, had the effect of discouraging other pilots from attempting to compete against SEAPA. Plaintiff also provided affidavits of non-member pilots which indicate that there were threats of retaliation from SEAPA if a non-member pilot competed; that a pilot was prevented from obtaining a license; and that there were threats to actual or potential competitors. Plaintiff concludes that given the pilots' status as independent contractors and defendants' admissions of the anti-competitive intent of their agreements, summary judgment should be granted to plaintiff on the second prong of the § 1 claim.

Anytime a potential competitor is not allowed to compete in the market place, there is a restraint. The suspension of plaintiff, if it had been carried out, would have been a restraint on plaintiff's ability

to compete as a marine pilot in the southeast. The agreement by SEAPA members not to compete with each other is a restraint on those members. The alleged agreement to cap the number of members allowed to join SEAPA would be a restraint on those potential members if there were no other means to compete.

The question is whether the restraints are unreasonable. *Chicago Board of Trade*, 246 U.S. at 238, 38 S.Ct. at 244. To address this question, the court finds that questions of fact exist to resolve this issue. As to the suspension of plaintiff, defendants are incorrect in arguing that there is undisputed evidence which demonstrates that SEAPA's actions were not intended to harm or unreasonably restrain competition. Plaintiff has provided evidence which suggests that many SEAPA members were concerned about the possible impact on their association if plaintiff were to allegedly continue to help non-member pilots. Plaintiff has also provided evidence which suggests that non-member pilots were discouraged from competing with SEAPA. The evidence is not undisputed. There are facts which are strongly disputed by both parties. Defendants' and plaintiff's motions for summary judgment on the second element of plaintiff's § 1 claim are denied.

▮▮▮▮ Included in defendants' motion for summary judgment is the argument that the court should apply the rule of reason to this case as opposed to the *per se* rule. A court will apply the rule of reason analysis unless the alleged violation falls into a category of "agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Northern P.R. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). The rule of reason requires a case-by-case analysis in which the finder of fact weighs all the circumstances in the case. *Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440 (9th Cir. 1988).

▮▮▮▮ A second category of cases is analyzed under the *per se* rule. Whether the *per se* rule applies depends on "whether the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output ... or instead one designed to increase economic efficiency and render markets more, rather than less, competitive." *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 290–91, 105 S.Ct. 2613, 2617, 86 L.Ed.2d 202 (1985), citing *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 19–20, 99 S.Ct. 1551, 1562–1563, 60 L.Ed.2d 1 (1979). Courts do not require evidence of any actual effects on competition because in certain cases the harm is determined to be great. *Bhan*, 929 F.2d at 1410. Examples of activity that are generally considered illegal *per se* include horizontal price-fixing, certain tying arrangements, certain group boycotts and division of markets. *Id.* "It is only after considerable experience with certain business relationships that courts classify them as *per se* violations." *Broadcast Music, Inc.*, 441 U.S. at 9, 99 S.Ct. at 1554.

Based on the above case law and other cases cited in the parties' briefs, the court concludes that the rule of reason will apply in this case. The court cannot say undoubtedly that the alleged activity of defendants is *per se* illegal. This rule will be applicable at the time that the parties proceed to trial on the restraint of trade issue.

### c. *Injury to Competition.*

▮▮▮ In some cases cited, the third element a plaintiff must prove in a § 1 Sherman Act claim is that the alleged activity occurred in interstate commerce. *Bhan*, 929 F.2d at 1410. In the present case, neither party addresses this factor. The court can conclude that this is not at issue. Other courts have described the third element a plaintiff must prove in a § 1 Sherman Act antitrust case as whether the claimant has suffered an injury which is causally related to the alleged antitrust violation, and whether that injury is of the type which antitrust laws were designed to

prevent. *California Computer Products v. International Business Machines Corp.*, 613 F.2d 727, 732 (9th Cir.1979). Courts have characterized this as an element in the rule of reason cases. *See Oltz*, 861 F.2d at 1445; *Kaplan v. Burroughs Corp.*, 611 F.2d 286 (9th Cir.1979). Other cases have analyzed this element as part of the issue of plaintiff's standing to bring an antitrust claim. *California Computer Products, Inc.*, 613 F.2d at 732 (court was addressing standing to bring an action under § 2 of the Sherman Act). Plaintiff must show that the injury caused a reduction of competition rather than an increase in competition, as a result of defendants' acts. *Id.*

Because the court has determined that genuine issues of material fact remain as to the second element of a § 1 Sherman Act claim, the third element, injury to competition, likewise remains unresolved at the summary judgment stage. If, as defendants argue, the restraints imposed are found to be reasonable, then plaintiff would be hard pressed to show injury. Consequently, there remain factual issues to be resolved, and both summary judgment motions are denied as to this issue.

■■■ Whether or not plaintiff has standing to pursue an antitrust claim must also be addressed. The establishment of standing would logically precede the presentation of plaintiff's case. *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 153 (9th Cir.1989). The Supreme Court has set out factors in making this evaluation of standing. These factors include:

1. The specific intent of the alleged conspirators;

2. The directness of the injury;

3. The character of the damages, including the risk of duplicative recovery, the complexity of apportionment, and their speculative character;

4. The existence of other, more appropriate plaintiffs;

5. The nature of the plaintiff's claimed injury.

*California State Council of Carpenters, etc. v. Associated General Contractors, Inc.*, 648 F.2d 527 (9th Cir.1980), *rev'd*, 459 U.S. 519, 537–45, 103 S.Ct. 897, 912, 74 L.Ed.2d 723 (1983).

Defendants argue that plaintiff is not a consumer of SEAPA nor a competitor of SEAPA. Defendants further contend that plaintiff's suspension does not reflect an anti-competitive effect and that there are other identifiable classes of persons who would reasonably be expected to bring the claims.

Plaintiff asserts that because he suffers a direct financial injury by defendants' agreement to suspend him, he has standing. Plaintiff also contends that he has standing because he is now an actual competitor instead of a potential competitor.

The court concludes that briefing on this issue in the summary judgment motions is inadequate. The elements set out by the Supreme Court as listed above provide a framework to argue the standing issue. Neither counsel closely approximated an adequate discussion of the elements. Therefore, defendants' and plaintiff's motions for summary judgment on the standing issue are denied without prejudice.

2. Monopoly/Attempted Monopoly.

Defendants contend that plaintiff cannot prove the elements of his monopoly claim or the elements necessary to prove his attempted monopoly claim. Plaintiff submits there is sufficient undisputed evidence in the record to deny defendants' motion for summary judgment and to grant plaintiff's cross-motion for summary judgment on the monopoly issue.

Section 2 of the Sherman Act prohibits monopolization. That section provides:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, ... shall be deemed guilty of a felony.

15 U.S.C. § 2 (1988).

■■■ To establish a monopoly claim under § 2 of the Sherman Act, the plaintiff must show "1) possession of monopoly

power in the relevant market, 2) willful acquisition or maintenance of that power, and 3) causal 'anti-trust' injury." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir.1987), citing *Hunt–Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 924 (9th Cir.1980).

■ To establish an *attempted* monopoly claim under § 2 of the Sherman Act, a plaintiff must show "1) specific intent to control prices or destroy competition in the relevant market, 2) predatory or anti-competitive conduct directed to accomplishing the unlawful purpose, and 3) a dangerous probability of success." *Rutman Wine Co.*, 829 F.2d at 736.

### a. Possession of Monopoly in the Relevant Market.

■ The power of possession of a monopoly is the power to control prices or to exclude competition. *United States v. Grinnell Corp.*, 384 U.S. 563, 571, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966). Courts inquire whether the alleged monopolist retains a high market share and whether there are barriers to entry into the market. *Oahu Gas Service, Inc. v. Pacific Resources, Inc.*, 838 F.2d 360 (9th Cir.1988). Further, to examine the market share, the relevant market must be determined. *Greyhound Computer Corp. v. International Business Machines Corp.*, 559 F.2d 488 (9th Cir.1977).

Initially, the court finds that no issues exist as to the relevant geographical market and product market. The issues were resolved by defendants' answer to plaintiff's complaint. *See* Complaint (Docket No. 1), ¶¶ 17 and 18; Answer (Docket No. 17) ¶¶ 17 and 18. The relevant geographical market is southeastern Alaska and the relevant product market is marine pilot services.

Defendants submit that Alaska's tariff regulation prevents unilateral price setting, preventing the association from controlling prices. Because there was no requirement that a pilot join an association, defendants contend that it cannot exclude competition in any market. In addition, defendants claim that its twenty-one members cannot

meet the demand for pilotage, and that there are thirty-six non-member pilots licensed for the southeast. Defendants further contend that Alaska has the lowest entry barriers of any state. Finally, defendants assert the shipping industry is not afraid to retain SEAPA's competitors and that competition is flourishing.

Plaintiff argues that defendants retained a high market share, which standing alone, raises an inference of market power to preclude summary judgment for defendants. Plaintiff points to evidence in the record which suggests that defendants held 100% of the market share in the southeastern Alaska marine pilot market from 1976 through 1989, and a 99.8% share of the market in 1990. Plaintiff suggests that this is sufficient evidence from which a jury could conclude that defendants have monopoly power.

Nothing in the record counters the market share description as presented by plaintiff. The percentage of the market share, standing alone, does not prove defendants had the power or general intent to exclude competition. Even though defendants argue that entry barriers into the market are the lowest of any state, defendants also suggest that historic factors contributed to the association retaining a high market share. Questions of fact remain for these seemingly contradictory reasons for defendants' ability to maintain a high market share when allegedly entry into the market was not difficult. Therefore, defendants' motion for summary on the first element of monopoly is denied and plaintiff's cross-motion as to this element is denied.

### b. Willful Acquisition or Maintenance of That Power.

■ "The test for willful acquisition or maintenance of monopoly power is whether acts complained of unreasonably restrict competition." *California Computer Products*, 613 F.2d at 735–36. The willful acquisition or maintenance of monopoly power is the power acquired or maintained by anti-competitive or exclusionary means or for such purposes. *Drinkwine v. Federated Publications, Inc.*, 780

F.2d 735, 739 n. 4 (9th Cir.1985). The Supreme Court has distinguished willful acquisition or maintenance of monopoly power with those instances where the power was acquired through growth or development as a consequence of superior product, business acumen or historic accident. *Grinnell Corp.*, 384 U.S. at 571, 86 S.Ct. at 1704.

Defendants submit that its position in the market is a result of decisions and activities predominantly motivated by legitimate business reasons, by its ability to provide a superior product, and through natural growth and historical accident. Defendants assert that its position was accomplished through the design of its organization which provided pilotage year-round, twenty-four hours a day. As the demand increased for its product, defendants assert the association grew in such a way to provide its product in an efficient and manageable manner. To meet the increased demand, SEAPA would use non-member pilots. Non-member pilots were free to compete with SEAPA but no pilot group attempted to compete until 1990. Defendants further contend that its share of the market is rapidly declining.

Plaintiff argues that the evidence in the record shows that other pilots had great difficulty breaking into the market without membership in SEAPA. Plaintiff also contends that evidence in the record shows that defendants' agreement to suspend plaintiff for thirty days was intended to maintain the monopoly.

There is evidence in the record which suggests it was impossible for a "would-be" pilot to obtain an unlimited license unless SEAPA was willing to provide the use of its vessel and supervision necessary for dockings and undockings as required by state regulation. Defendants admit that they "trained" all but one southeast pilot, and that pilot was grandfathered in. Plaintiff provided evidence that defendants refused to provide the use of the vessel and supervision for dockings and undockings to certain pilots attempting to obtain an unlimited license. This evidence is sufficient to find that a material issue of fact remains.

Defendants suggest that the form of its organization is necessary to maintain year-round operations, and that the capacity to increase membership is finite. Such an explanation does not answer the question why, if SEAPA found it necessary to use a number of non-member pilots for its summer dispatch schedule, its organization could not be structured so as not to limit the number of pilots. Further, the recent "competition" in the marine pilot market does not prove nor disprove the willful acquisition or maintenance by defendants. It does not answer the question whether there previously was an impossible barrier to market entry which may have been eliminated due to the recent litigation or the revision of the pilot act, or other factors. Based on the evidence in the record, the court finds there exist genuine issues of material fact which preclude the grant of summary judgment to both defendants and plaintiff. Therefore, as to the second element to the monopoly claim, both summary judgment motions are denied.

### c. Causal Anti-Trust Injury.

To the extent that this issue depends on the standing issue as discussed above in section III.B.1.c., both motions are denied. To the extent this element requires decision on other elements of plaintiff's monopoly claim, both motions are denied as to this issue.

Plaintiff also alleged an attempted monopoly. Under the first element, defendants argue that the evidence conclusively demonstrates that SEAPA has not specifically intended to control prices or destroy competition. As noted above, material issues of fact remain as to this element. Second, defendants claim that SEAPA has not engaged in predatory or anti-competitive conduct. Again, this issue has yet to be resolved on the summary judgment motions. Finally, defendants assert that the evidence demonstrates that a dangerous possibility of success is not present. As with the other issues, this issue remains to be resolved. Therefore, the motions for

summary judgment as to the attempted monopoly claim are denied.

### 3. State Law Claims.

#### a. *Defamation.*

Defendants assert that plaintiff cannot prove that he has been defamed. Plaintiff claims that defendants have not met their initial burden of establishing undisputed facts in the record which support their claim of privilege, but that there is sufficient evidence to grant plaintiff's cross-motion on this issue.

■■■■■ A communication is defamatory if it "tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Green v. Northern Pub. Co.,* 655 P.2d 736, 739 (Alaska 1982). Two defenses to a claim of defamation are truth and privilege. *Id.* at 740.

■■■ Defendants maintain that the claims against plaintiff by the hearing board were true. In addition, defendants submit that the suspension in no way reflected on his skills as a pilot. Defendants assert that plaintiff is held in high regard by SEAPA and the industry so that he has not been injured by the allegedly defamatory statements.

Plaintiff claims that in discussions with other pilot associations, defendants labeled plaintiff as a troublemaker who wanted to destroy the association, and that the decision to suspend him has been widely discussed throughout the marine pilot industry. Plaintiff maintains that defendants' assertion that it did not malign plaintiff's professional skills as a pilot is inapposite as their statements will deter other individuals and organizations from associating with him regardless of his professional abilities as a marine pilot.

Defendants assert that plaintiff maintains an excellent reputation in the pilotage community in Alaska. Plaintiff claims that defendants' statements to other pilot associations will deter individuals and organizations from associating with him regardless of his piloting ability. The very organiza-tion that allegedly defamed plaintiff claims no harm to plaintiff's reputation, and the very person allegedly defamed claims the statements by SEAPA will deter others from associating with him. Neither party presented evidence other than their own affidavits to support their respective arguments. Based on the record presented to the court, it cannot be said that no issue of material fact remains; therefore, both motions are denied as to this issue.

#### b. *Breach of Contract.*

■■■ Defendants claim that plaintiff cannot prove a breach of contract. Defendants assert SEAPA's bylaws are fair, and that plaintiff's disciplinary action was not in contravention with the bylaws, nor was the action arbitrary nor capricious. Defendants conclude that the evidence conclusively demonstrates that SEAPA did not engage in monopolistic activities nor conspire to restrain trade.

Plaintiff asserts that defendants' disparate treatment of him on the charges brought against him compared with the treatment accorded Captain Smith on the charges presented against him were unprincipled and shabby. Plaintiff further asserts that the charge against him of "solicitation" is not an offense under SEAPA's rules or bylaws. Because of these two failures, plaintiff alleges that defendants failed in their duty of good faith and fair dealing.

Because, as discussed above, the evidence does not conclusively demonstrate that SEAPA did not engage in monopolistic behavior or conspire to restrain trade, there is an issue of fact regarding plaintiff's breach of contract claim. Further, reasonable minds could differ regarding the evidence presented by defendants on the issue of the disciplinary action and subsequent suspension and the evidence presented by plaintiff. Plaintiff's evidence suggest that, substantively, the charges against him resulted, in part, from a discussion held at a particular SEAPA meeting. Plaintiff's evidence further suggests that procedurally the charges were inappropriate and that it was an error to have SEA-

PA's counsel to allegedly act as hearing judge and prosecutor. Plaintiff's evidence also suggests there was disparate treatment in the association's method of handling charges brought against members. Defendants' evidence suggests that the disciplinary charge and resulting suspension against plaintiff were procedurally and substantively proper. Because reasonable minds could differ, the motions for summary judgment as to the breach of contract issue are denied.

#### c. Right to Pursue Livelihood/Due Process.

 Defendants submit that no state action is present in this case on which plaintiff may base his violation of the above claim. Plaintiff claims that defendants have not met their initial burden to show that there are no facts in dispute on this issue.

Article I, Section 1 of the Alaska Constitution provides:

> *Inherent Rights.* This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

The Alaska Supreme Court, in *United States Jaycees v. Richardet,* 666 P.2d 1008 (Alaska 1983), upheld a superior court ruling which decided that the above section of the Alaska constitution requires "state action" as opposed to private action as a predicate to application. *Id.* at 1013. In an earlier ruling in the present case, this court determined that no state action was present. Because there is no state action, plaintiff's constitutional claim is invalid. Therefore, defendants' motion for summary judgment on this issue is granted and plaintiff's cross-motion for summary judgment on this issue is denied.

#### d. Punitive Damages.

Defendants contend there is no basis for plaintiff's claim of punitive damages. Defendants maintain that the evidence shows no undisputed facts regarding plaintiff's defamation claim or his breach of contract claim, and therefore plaintiff's punitive damage claim must fail. Plaintiff submits that punitive damages are available for the tort of defamation and in certain contract actions where the conduct also constitutes a tort for which punitive damages are available.

 Punitive damages are not available on federal anti-trust claims. *See McDonald v. Johnson & Johnson,* 722 F.2d 1370, 1381 (8th Cir.1983), *cert. denied,* 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984). Under Alaska law, punitive damages are allowed when a defendant's conduct is outrageous, malicious, or done with such reckless disregard for the interest of another person so as to constitute outrageous conduct. *Alaska Northern Development, Inc. v. Alyeska Pipeline Service Co.,* 666 P.2d 33, 41 (Alaska 1983), *cert. denied,* 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 170 (1984). Punitive damages may be recovered in an action for breach of contract " 'if the conduct constituting the breach is also a tort for which punitive damages are recoverable.' " *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1286 (Alaska 1985), *quoting McKibben v. Mohawk,* 667 P.2d 1223, 1232 (Alaska 1983).

As discussed above, it is necessary to resolve questions of fact regarding plaintiff's defamation claim and his breach of contract action. Because those issues remain, plaintiff's claim for punitive damages also remains. Therefore, both motions for summary judgment as to the punitive damage issue are denied.

#### D. Requests for Judicial Notice.

Plaintiff requests this court take judicial notice of the United States Coast Guard action against Captain Smith. Defendants request this court take judicial notice of the action taken by the State of Alaska in regard to the same incident involving Cap-

tain Smith. Both requests are granted. Such reports are the type of fact of which a court may take judicial notice. *See* Fed. R.Evid. 201(b).

## IV. ORDER.

Accordingly, IT IS ORDERED:

(1) THAT defendants' summary judgment motion and plaintiff's cross-motion for summary judgment are granted in part and denied in part;

(2) THAT the motion to strike is denied;

(3) THAT the plaintiff's request and defendants' request for judicial notice are granted; and

(4) THAT the motion to allow supplemental pleadings is granted.